IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DEVERAN MURPHY, #B81702,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18−cv–1353−SMY |
| | ) | |
| **C/O GRIFFIN,** | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **JANE DOE 1,** | ) | |
| **JANE DOE 2,** | ) | |
| **JANE DOE 3,** | ) | |
| **JANE DOE 4,** | ) | |
| **JANE DOE 5,** | ) | |
| **JOHN DOE 1,** | ) | |
| **JOHN DOE 2, and** | ) | |
| **WARDEN,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Deveran Murphy, an inmate at Western Illinois Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights that allegedly occurred at Menard Correctional Center ("Menard"). Specifically, Plaintiff claims the defendants have been deliberately indifferent to his serious medical issues, in violation of the Eighth Amendment. (Doc. 6). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief, must be dismissed. 28 U.S.C.

1

§ 1915A(b). An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At this juncture, the factual allegations of the Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

Plaintiff makes the following allegations in his Complaint (Doc. 6): on September 10, 2016, Plaintiff began experiencing excruciating pain in his back, so he pressed his cell's medical emergency call button. (Doc. 6, p. 3). Sgt. Rawson came to Plaintiff's cell and then "fetched" a nurse. *Id.* The nurse, Jane Doe 1, was unprofessional. *Id.* She made Plaintiff "stand despite the obvious distress that [he] was in." *Id.* She told Plaintiff "to climb on top of some scales" on a 3-foot tall cabinet. *Id.* The sergeant took the scale down so Plaintiff would not have to climb on it, but had to hold on to Plaintiff to keep him from falling while he was on it. (Doc. 6, pp. 3-4).

The nurse ordered Plaintiff to pull down his jumpsuit and climb on the examination table, but he was unable to do so on his own. (Doc. 6, p. 4). Rawson helped Plaintiff disrobe, and when he could not climb onto the table, the nurse examined him while he was leaning over it. *Id.* The nurse told Plaintiff that he would be charged a $5 co-pay and that she would give him ibuprofen despite the fact that it would not help him. *Id.* Rawson told Plaintiff to get into the wheelchair for the trip back to his housing unit, but once Plaintiff got into the wheelchair, the nurse told Rawson that he could not take it and that Plaintiff would have to walk. *Id.*

Plaintiff took the ibuprofen but it did not do him any good. (Doc. 6, p. 5). When the next shift came in, Plaintiff alerted C/O John Doe 1 that he was in pain and needed medical attention.

*Id.* After waiting for a while, Plaintiff asked his cellmate to press the call button, and a nurse, Jane Doe 2, came to his cell and told him that he had already been seen and that he would not be seen again on that shift. *Id.* Plaintiff told Jane Doe 2 that he was in "agonizing and excruciating pain", and she responded that she "didn't care." *Id.*

Plaintiff waited for a while and still could not stand his pain, so he had his cellmate press the button again. *Id.* John Doe 1 and Jane Does 3, 4, and 5 came to Plaintiff's cell and heckled him, made fun of him, made faces at him as if they were crying, flipped Plaintiff off, cursed at Plaintiff, and mouthed expletives at Plaintiff. *Id.* Shortly after they left, Plaintiff began to moan, cry out, and urinate blood. (Doc. 6, p. 6). Plaintiff urinated blood three times that night, and when he showed the blood to Jane Does 3, 4, and 5 and John Doe 1, they told Plaintiff to "[s]uck it up." *Id.* Plaintiff was left in his cell without medical treatment for the rest of the night. *Id.* Because of the severe pain he was experiencing, Plaintiff could not eat, sleep, drink, or think straight, and he "wished for death." *Id.*

When the next shift arrived in the morning, Plaintiff's cellmate pressed the call button again. *Id.* Plaintiff told C/O Dupree about his issues, including his pain and the blood in his urine. *Id.* Dupree left and brought a nurse back to Plaintiff. *Id.* Plaintiff told the nurse about the blood in his urine, and she left and brought a cup back for Plaintiff to urinate in. *Id.* Plaintiff urinated in the cup and the test came back positive for blood. (Doc. 6, p. 7). Plaintiff was then admitted to the infirmary. *Id.* Plaintiff was given Tramadol, a muscle relaxer. *Id.* When Plaintiff urinated a skin-like substance, he notified his health care providers. *Id.* One nurse told Plaintiff that she thought it looked like kidney lining or bladder lining. *Id.* Plaintiff does not believe that the substance was tested. (Doc. 1, p. 7). The medical providers told Plaintiff they thought he had kidney stones. (Doc. 6, p. 8).

Plaintiff was in such pain that he could not get up without some form of support. *Id.* He was "left in the observation room all day and night in pure agony." *Id.* When the doctor saw Plaintiff, he determined that Plaintiff needed a CAT Scan. *Id.* Plaintiff was "treated very roughly and man-handled by C/O Griffin," who "seemed to be very angry" with his task of taking Plaintiff to the hospital. *Id.* John Doe 2 also seemed to be upset about the situation. *Id.* Griffin shoved and pulled Plaintiff into the van, despite Plaintiff's complaints of severe pain. *Id.* Plaintiff felt like the driver was trying to hit the potholes in the road as the van was swerving from lane to lane. *Id.* When Plaintiff asked the corrections officers if they could not hit the corners so fast because each of them hurt, they both laughed at him. *Id.*

Upon arrival to the hospital, "Griffin yanked [Plaintiff] very roughly out of the back of the van and threw [Plaintiff] into a waiting wheel chair." *Id.* Plaintiff cried out in pain. *Id.* Griffin threw Plaintiff on the table for the scan. (Doc. 6, p. 9). Plaintiff told them that he thought it was his spine, but "[e]veryone kept saying they suspected kidney stones." (Doc. 6, p. 8). After the scan, Plaintiff was told that they might see something but could not tell. (Doc. 6, p. 9). He suggested they scan his bones, but they told him they could only do what the doctor ordered. *Id.* Plaintiff was given more pain medication and taken back to Menard, where he was kept in the infirmary overnight. *Id.* The next day, Plaintiff was told there were no results, and he was sent back to his cell. *Id.*

Plaintiff was left in his cell without treatment – unable to move much, and in constant pain. *Id.* He inquired about X-rays and was told they would be doing some, but none were performed. *Id.* Shortly thereafter, Plaintiff was sent to Jacksonville County Jail on a Court Writ. *Id.* They assigned Plaintiff to a misdemeanor deck for his safety when they noticed that he could barely move. *Id.* When Plaintiff returned to Menard, the staff refused to give him his prescribed

pain and nerve medication, Gabapentin. (Doc. 6, p. 10). Plaintiff is supposed to get 1000 mgs 3 times per day, but he was only given his medication on two occasions. *Id.* He further claims that Wexford failed to train its medical staff at Menard. *Id.*

Plaintiff was transferred from Menard to Western Illinois Correctional Center, where he has not been given proper treatment and continues to be in pain. *Id.* Plaintiff can feel the bones in his back through his skin from muscle loss. *Id.* Plaintiff seeks declaratory and monetary relief. *Id.*

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 3 Counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Jane Does 1-5, John Does 1-2, and Griffin showed deliberate indifference to Plaintiff's serious undiagnosed medical need that caused him to urinate blood and experience extreme pain, in violation of the Eighth Amendment.
>
> **Count 2 –** Griffin subjected Plaintiff to excessive force in violation of the Eighth Amendment when he roughly handled Plaintiff during his trip to an outside hospital, causing him excess pain.
>
> **Count 3 –** Wexford failed to train its medical staff at Menard Correctional Center in violation of the Eighth Amendment.

Counts 1 and 2 will be allowed to proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

## Count 1 – Deliberate Indifference

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). As the Supreme

Court has recognized, "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state such a claim, an inmate must allege facts showing that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff has stated a colorable deliberate indifference claim against Jane Does 1-5, John Doe 1, and Griffin, based on their allegedly inappropriate treatment of Plaintiff when he complained to them of extreme pain. However, Plaintiff has failed to state a claim against John Doe 2, as his only allegation clearly associated with this defendant is that he "seemed to be very upset at the situation" involving Plaintiff being sent to an outside hospital for testing. (Doc. 6, p. 8). This allegation alone does not suggest deliberate indifference. Count 1 will therefore proceed against Jane Does 1-5, John Doe 1 and Griffin, and will be dismissed without prejudice against John Doe 2.

### Count 2 – Excessive Force

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment, and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). At this early stage, Plaintiff has sufficiently pled an excessive force claim against Griffin for his allegedly rough treatment of Plaintiff during his trip to an outside hospital. Count 2 will therefore proceed.

### Count 3 – Failure to Train

As to Count 3, Wexford cannot be held liable merely because it employs a prison doctor or nurse who was allegedly deliberately indifferent to an inmate's medical condition. Rather, a

corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). A plaintiff "must demonstrate that the '*deliberate* action attributable to the [corporation] itself is the "moving force"' behind the deprivation of his constitutional rights." *Johnson v. Cook Cnty.*, 526 F. App'x 692, 695 (7th Cir. 2013) (citing *Bd. of the Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978))).

Here, Plaintiff's allegations are insufficient to state a viable claim against Wexford. He merely alleges that Wexford failed to adequately train its medical staff at Menard. No plausible inference that Wexford's failure to properly train its staff was the moving force behind Plaintiff's allegedly improper medical treatment arises from this conclusory allegation. Rather, Plaintiff appears to be attempting to asserting a *respondeat superior* claim against Wexford based on the actions of the defendants; a claim that is not actionable under § 1983. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). As such, Count 3 will be dismissed without prejudice.

### Identification of Unknown Defendants

Plaintiff named the Warden of Menard, in his or her official capacity only, for the purpose of identifying the John and Jane Doe Defendants. The Warden of Menard will remain a defendant in this action, in his or her official capacity, for this purpose only. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of the Doe defendants are discovered, Plaintiff shall file a motion to substitute each newly identified defendant.

**Pending Motions**

Plaintiff has filed two Motions to Appoint Counsel (Docs. 3, 8), which are **REFERRED** to United States Magistrate Judge Reona J. Daly for a decision.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCCED** against **JANE DOES 1-5**, **JOHN DOE 1**, and **GRIFFIN** and is **DISMISSED** without prejudice against **JOHN DOE 2**.

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **GRIFFIN**.

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **JOHN DOE 2** and **WEXFORD** are **DISMISSED** from this action without prejudice for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that as to **COUNTS 1** and **2**, the Clerk of Court shall prepare for **JANE DOES 1-5** (once identified), **JOHN DOE 1** (once identified), **GRIFFIN**, and **WARDEN OF MENARD** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if

not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on the Doe defendants until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with their names and service addresses.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Reona J. Daly for further pre-trial proceedings, including a decision on the pending Motions to Appoint Counsel (Docs. 3, 8) and a plan for discovery aimed at identifying the Doe defendants with particularity. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Daly for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 13, 2018**

                                                                 s/ STACI M. YANDLE
                                                                 United States District Judge